IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATALIE BROWN, et al.,

Plaintiffs,

vs.

SUNTRUST BANKS, INC., et al.,

Defendants

Case No: 1:14-cv-1090-RMC

**DEFENDANTS' MOTION TO TRANSFER VENUE AND INCORPORATED BRIEF IN SUPPORT OF MOTION**

Meredith Moss
Washington, D.C. Bar No. 484108
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 200
Washington, D.C. 20006
(202) 626-2916
mmoss@kslaw.com

*David Tetrick, Jr.
*Darren A. Shuler
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-4600
dtetrick@kslaw.com
dshuler@kslaw.com

* *pro hac vice application pending*

# TABLE OF CONTENTS

INTRODUCTION ........ 1

RELEVANT FACTUAL BACKGROUND ........ 2

I. The Plan Has No Relevant Connection to the District of Columbia. ........ 2

II. Plaintiffs Have No Relevant Connection to the District of Columbia. ........ 3

III. Defendants Have No Relevant Connection to the District of Columbia. ........ 4

IV. The Alleged Breaches of Fiduciary Duty Have No Relevant Connection to the District of Columbia ........ 5

V. Plaintiffs Have Sought to Become Named Plaintiffs in Two Related Cases in the Northern District of Georgia, and One Such Motion Remains Pending ........ 5

ARGUMENT ........ 8

I. Legal Standard ........ 8

II. Jurisdiction and Venue Are Appropriate in the Northern District of Georgia ........ 9

III. The Private-Interest Factors Favor Transfer. ........ 10

A. Plaintiffs' Choice Of Forum ........ 10

B. Defendants' Choice of Forum ........ 12

C. Where the Claim Arose ........ 13

D. Convenience of the Parties ........ 14

E. Convenience for the Material Witnesses. ........ 15

F. Ease of Access to Sources of Proof ........ 17

IV. The Public-Interest Factors Favor Transfer. ........ 17

A. Transferee Court's Familiarity With the Governing Laws ........ 17

B. Relative Congestion of the Courts ........ 19

C. Local Interests in Deciding Local Controversies at Home ........ 19

CONCLUSION ........ 21

## INTRODUCTION

This purported ERISA class action is a prime example of why Congress enacted 28 U.S.C. § 1404(a), which provides a mechanism to transfer a case to a more appropriate venue for "the convenience of parties and witnesses [and] in the interest of justice." Here, every single one of the private- and public-interest factors the Court considers in deciding a § 1404(a) motion favors transfer to the Northern District of Georgia. That is where virtually all Defendants, all key witnesses, and all documents relevant to Plaintiffs' claims are located. It is where the ERISA plan at issue is administered and where any relevant events occurred, including the breaches of fiduciary duty alleged in Plaintiffs' Complaint.

And there are compelling reasons why this case should be transferred to the Northern District of Georgia beyond these typical § 1404(a) considerations. Plaintiffs' Complaint asserts the same purported class action claims that their counsel has been litigating in two cases in the Northern District of Georgia for the past three years: *Fuller v. SunTrust Banks, Inc.*[1] and *Stargel v. SunTrust Banks, Inc.*[2] *Fuller*, in fact, has been to the Eleventh Circuit, which affirmed its dismissal in a published opinion.[3] Plaintiffs concede that their claims are "included" in those cases.[4] That is an understatement. They sought, through their same counsel, to intervene as named plaintiffs in both *Fuller* and *Stargel* by submitting proposed complaints that are

---

[1] No. 1:11-cv-00784-ODE (N.D. Ga.).

[2] No. 1:12-cv-03822-ODE (N.D. Ga.).

[3] *See Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685 (11th Cir. 2014) (affirming dismissal of substantively identical claims as time-barred under ERISA).

[4] *See* Compl. ¶ 90.

substantively identical to the one that commenced this case.[5] Things have not gone well for Plaintiffs and their counsel in Atlanta—*Fuller* has been dismissed, appealed, and affirmed, and *Stargel* has been dismissed and not appealed—no doubt making this District seem like a safe harbor by comparison. But filing this case in this District after their attempts to intervene in the Northern District of Georgia (one of which is still pending) belittles the amount of judicial energy that has already been expended on Plaintiffs' claims in Atlanta, and does not serve the "interest of justice."

Moreover, Plaintiffs have no relevant connection to the District of Columbia: they all four reside near Norfolk, Virginia, in the Eastern District of Virginia (and outside this Court's subpoena power). In fact, the only connection between this lawsuit and the District of Columbia appears to be that Plaintiffs' counsel has an office here.

For these reasons, and those discussed below, the Court should grant Defendants' motion to transfer this case to the Northern District of Georgia.

## RELEVANT FACTUAL BACKGROUND

### I. The Plan Has No Relevant Connection to the District of Columbia.

The SunTrust Banks, Inc. 401(k) Plan (the "Plan") is an Internal Revenue Code 401(k) "defined contribution" arrangement that permits participants to contribute a portion of their pre-tax wages on a tax-deferred basis, subject to certain limits imposed by law.[6] SunTrust is the "sponsor" of the Plan.[7] The Plan Committee is the sole "named fiduciary"[8] of the Plan, is

[5] *See* No. 1:11-cv-00784-ODE, Doc. 81-2; No. 1:12-cv-03822-ODE, Doc. 35-1.

[6] *See* Compl. ¶ 30.

[7] Compl. ¶ 34; *see* 29 U.S.C. § 1002(16)(B).

designated as the Plan "administrator," and is responsible for the day-to-day operations of the Plan.[9]

The Plan Committee holds its meetings at SunTrust's headquarters in Atlanta, Georgia, and did so throughout the putative class period.[10] The Plan Committee's records are also maintained at SunTrust's headquarters in Atlanta.[11]

## II. Plaintiffs Have No Relevant Connection to the District of Columbia.

The named Plaintiffs are Natalie Brown, a resident of Chesapeake, Virginia; Elaine Jefferson, a resident of Virginia Beach, Virginia; Barbara A. Kennedy, a resident of Portsmouth, Virginia; and Mariah C. Williams, a resident of Hampton, Virginia.[12] Chesapeake, Virginia Beach, Portsmouth, and Hampton are all located near Norfolk, Virginia, in the United States District for the Eastern District of Virginia. None of the named Plaintiffs resides in the District of Columbia, and the Complaint makes no allegation that they have any relevant connection to the District.

Each Plaintiff alleges she is a participant in the Plan.[13] They purport to represent a class comprised of "[a]ll participants and beneficiaries in the SunTrust Banks, Inc. 401(k) Plan, excluding the Defendants, who had a balance through their Plan accounts in any of the Affiliated

---

[8] *See* 29 U.S.C. § 1102(a)(1); Plan Doc. § 1.9. A copy of the Plan Document is Exhibit 1 to the Declaration of Jacqueline Lombard ("Lombard Dec."), attached as Exhibit A.

[9] Compl. ¶ 36; Plan Doc. § 9.1(c)(4), § 1.43; *see* 29 U.S.C. § 1002(16)(A).

[10] Lombard Dec. ¶ 13.

[11] *Id.* ¶ 14.

[12] Compl. ¶¶ 15-18.

[13] *Id.*

Funds at any time from April 10, 2004 to December 31, 2012."[14] Plaintiffs estimate that the putative class includes "thousands of persons, in numerous locations," and that the "Plan has more than 39,000 participants."[15] Indeed, if a class were certified, its members would be widely dispersed across numerous federal districts in the states in which SunTrust does business, plus additional states in which former employees and retirees live.[16] That said, however, nearly 27% of the 39,000 participants live in Georgia (more than in any other jurisdiction), compared with fewer than .5% in the District of Columbia.[17]

**III. Defendants Have No Relevant Connection to the District of Columbia.**

SunTrust, like the other major financial institutions in the United States, has a significant presence in the District of Columbia, and the Complaint correctly alleges some of those connections.[18] But under 28 U.S.C. § 1404, the relevant connections are to the proposed transferee district. Defendant SunTrust Banks, Inc. is headquartered and maintains its principal place of business in Atlanta.[19] All of the Individual Defendants are current or former SunTrust officers, directors, or employees—and all but two lived and worked in Atlanta during their

[14] *Id.* ¶ 76. The "Affiliated Funds" are certain mutual funds that were offered as investment options for Plan participants.

[15] *Id.* ¶ 78.

[16] Lombard Dec. ¶¶ 19-20.

[17] *Id.* ¶ 21.

[18] *See* Compl. ¶ 14.

[19] Lombard Dec. ¶ 2. The Complaint that Plaintiffs have proposed to file in *Fuller* notes that "[SunTrust's] corporate headquarters are in Atlanta, Georgia," but the Complaint in this case contains no such reference. *Compare* Fuller Compl. ¶ 24 *with* Compl. ¶ 20.

tenures with SunTrust.[20] The two Individual Defendants who did not live and work in Atlanta regularly traveled to Atlanta to conduct SunTrust business.[21] All but five of the nineteen Individual Defendants currently reside in the Northern District of Georgia; not one resides in the District of Columbia or has any relevant connection to this District.[22]

## IV. The Alleged Breaches of Fiduciary Duty Have No Relevant Connection to the District of Columbia.

In general, Plaintiffs allege that Defendants breached their fiduciary duties under ERISA by alleged actions and inactions related to the selection, monitoring, and maintenance of SunTrust-affiliated investment options for the Plan.[23] The claims in Plaintiffs' Complaint depend exclusively on alleged actions that took place in the Northern District of Georgia, where the Plan is administered in all respects.[24] Any fiduciary decisions, and any monitoring of the performance of the fiduciaries who made such decisions, also took place in Atlanta.[25]

## V. Plaintiffs Have Sought to Become Named Plaintiffs in Two Related Cases in the Northern District of Georgia, and One Such Motion Remains Pending.

This is the third of three substantively identical lawsuits Plaintiffs' counsel has filed on behalf of alleged participants in the Plan. The first two—*Fuller* and *Stargel*—have been active in the Northern District of Georgia, before Senior United States District Judge Orinda D. Evans,

---

[20] Lombard Dec. ¶¶ 10-12, 15-16.

[21] *Id.* ¶¶ 11, 16.

[22] *Id.* ¶¶ 12, 16.

[23] *See generally* Compl. ¶¶ 91-146.

[24] Lombard Dec. ¶¶ 8, 13, 17.

[25] *Id.* ¶ 8, 13, 17.

since 2011 and 2012. According to Plaintiffs, *Fuller* and *Stargel* "included the claims brought in this suit."[26]

*Fuller* was first filed on March 11, 2011.[27] While the defendants' motion to dismiss for failure to state a timely claim was pending, Sandra Stargel and Selethia Pruitt moved to "intervene" in *Fuller*. Judge Evans denied that motion and granted the defendants' motion to dismiss.[28] The day after Judge Evans dismissed *Fuller* and rejected their attempt to intervene, Stargel and Pruitt initiated *Stargel*.[29] In the meantime, the plaintiff in *Fuller* appealed the dismissal of her complaint to the Eleventh Circuit.

While the *Fuller* appeal was pending, Judge Evans granted defendants' motion to dismiss in *Stargel* for similarly failing to state a timely claim.[30] Instead of appealing, the plaintiffs in *Stargel* sought relief from the judgment (or reconsideration) and leave to add Plaintiffs Brown, Jefferson, Kennedy, and Williams as named plaintiffs in *Stargel*.[31] To this end, they submitted a proposed complaint that is substantively identical to the Complaint filed with this Court.[32]

The *Stargel* motion seeking to add Plaintiffs into that case was pending when the Eleventh Circuit affirmed the dismissal of *Fuller*.[33] In its opinion, the Eleventh Circuit

---

[26] *See* Compl. ¶ 90.

[27] No. 1:11-cv-784-ODE, Doc. 1.

[28] *See Fuller v. SunTrust Banks, Inc.*, 2012 WL 1432306 (N.D. Ga. Mar. 20, 2012); No. 1:11-cv-784-ODE, Doc 69.

[29] No. 1:12-cv-03822-ODE, Doc. 1.

[30] *Stargel v. SunTrust Banks, Inc.*, 968 F. Supp. 2d 1215 (N.D. Ga. 2013).

[31] No. 1:12-cv-03822-ODE, Doc. 35.

[32] *See* No. 1:12-cv-03822-ODE, Doc. 35-1.

[33] *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685 (11th Cir. 2014).

"review[ed] what happened in the related case of *Stargel*" and agreed with the reasoning the district court relied upon in dismissing *Stargel*,[34] and held that the relevant claims in *Fuller* were "time-barred by ERISA's six-year period of limitations."[35]

Following the Eleventh Circuit's affirmance, the plaintiff in *Fuller* filed a Rule 60(b) motion seeking to reopen the case in the Northern District of Georgia and, just as in *Stargel*, to add Plaintiffs Brown, Jefferson, Kennedy, and Williams as named plaintiffs in *Fuller*. This motion included a proposed complaint that is substantively identical to the complaint proposed in *Stargel* and the one filed by Plaintiffs here,[36] and it remains pending before Judge Evans.[37]

In *Stargel*, however, Judge Evans has denied the motion that sought to add Brown, Jefferson, Kennedy, and Williams as named plaintiffs, observing that "[w]hat Plaintiffs seek is . . . to amend their complaint to reassert Pruitt's dismissed claims and to add four new plaintiffs."[38] This did not constitute grounds for relief from the judgment or reconsideration of the decision in *Stargel*.[39]

---

[34] *See id.* at 693-94, 697-702; *Stargel*, 968 F. Supp. 2d at 1233-36.

[35] 744 F.3d at 702.

[36] *See* No. 1:11-cv-00784-ODE, Doc. 81-1. For the Court's convenience, Defendants have submitted a redline comparison of the proposed complaint submitted in *Fuller* (Doc. 81-2) with the Complaint filed to initiate this case. *See* Exhibit 1 to Shuler Declaration, which is Exhibit B to this Motion.

[37] *See* Compl. ¶ 90.

[38] No. 12-cv-03822-ODE, Doc. 44, at 7-8.

[39] *Id.*

Plaintiffs filed this lawsuit ten days after the Northern District of Georgia rejected their attempt to intervene in *Stargel*, and although their motion seeking to become named plaintiffs in *Fuller* and pursue a substantively identical complaint remains pending.

**ARGUMENT**

## I. Legal Standard

28 U.S.C. § 1404(a) allows one federal district court to transfer a case to another "to prevent the waste of 'time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense.'"[40]

To prevail on a motion to transfer under § 1404(a), the moving party must first establish "that the intended transferee court has personal jurisdiction and is an appropriate venue."[41] It then must show that the "set of private and public interest factors that guide the Court's analysis" weigh in favor of the transfer.[42] The private interest considerations are (1) the plaintiffs' choice of forum; (2) the defendants' choice of forum; (3) where the claim arose; (4) the relative convenience each forum would pose to the parties; (5) the convenience of each forum for the witnesses, to the extent the witnesses are actually unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.[43] The public interest considerations are (1) the transferee

[40] *Ansell Healthcare Products LLC v. Tillotson Corp.*, 567 F. Supp. 2d 196, 200 (D.D.C. 2008) (Collyer, J.) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

[41] *Virts v. Prudential Life. Ins. Co. of Am.*, 950 F. Supp. 2d 101, 104 (D.D.C. 2013) (collecting authority).

[42] *Id.*

[43] *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 156-57 (D.D.C. 2008) (quoting *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000)).

court's familiarity with the governing laws; (2) the relative congestion of the transferee and transferor courts; and (3) the "local interest in deciding local controversies at home."[44]

**II. Jurisdiction and Venue Are Appropriate in the Northern District of Georgia.**

It is indisputable that the Northern District of Georgia has both jurisdiction and venue. Under ERISA, jurisdiction and venue are proper in any district "where the plan is administered, where the breach took place, or where a defendant resides or may be found."[45] The Northern District of Georgia is a proper district under all of those tests: the Plan is administered in Atlanta, all alleged fiduciary breaches (as well as all other actions Defendants took with respect to the Plan) could have occurred only there, and all of the Defendants may be found in Atlanta for purposes of Plaintiffs' claims.[46] As the proposed complaints that Plaintiffs have submitted in the transferee district allege, jurisdiction and venue are proper in the Northern District of Georgia.[47] The first prong of the transfer test is easily satisfied.[48]

---

[44] *Id.*; *see also Ansell*, 567 F. Supp. 2d at 200.

[45] 29 U.S.C. § 1132(e)(2); *see also Virts*, 950 F. Supp. 2d at 104-05 (D.D.C. 2013) (discussing ERISA's jurisdiction and venue provisions in the context of a § 1404(a) transfer motion).

[46] Lombard Dec. ¶¶ 8, 11-13, 16-17.

[47] No. 1:11-cv-00784-ODE, Doc. 81-2 ¶¶ 13-14; No. 1:12-cv-03822-ODE, Doc. 35-1 ¶¶ 13-14.

[48] *See Gipson*, 563 F. Supp. 2d at 156 ("[B]ecause the Plan is administered in Minnesota, the alleged breach of fiduciary duty took place in Minnesota and all the defendants either reside or may be found in Minnesota, venue also properly lies in the District of Minnesota."); *Virts*, 950 F. Supp. 2d at 105 ("Because [the defendant] resides in New Jersey, venue is appropriate in the District of New Jersey for this action. *See* 29 U.S.C. § 1132(e)(2).").

## III. The Private-Interest Factors Favor Transfer.

### A. Plaintiffs' Choice Of Forum

The first private-interest factor is Plaintiffs' choice of forum. But the impact of a plaintiff's choice of forum is diminished, if not entirely negated, where "key factors that would warrant giving it special weight are not present."[49] These "key factors" are not present here.

First, "substantially less deference is granted to a plaintiff's choice of forum if it is not the plaintiff's home forum."[50] This District is not the home forum of any of the named Plaintiffs, all of whom reside in the Eastern District of Virginia.[51]

Second, in a purported class action such as this one "in which the plaintiffs propose to represent a class of potential plaintiffs who reside throughout the country, the plaintiffs' choice of forum deserves less weight than it is typically given."[52] Here, Plaintiffs estimate that the Plan has "more than 39,000 participants," and that the putative class includes "thousands of persons, in numerous locations."[53]

---

[49] *Aucoin v. Prudential Ins. Co. of Am.*, 959 F. Supp. 2d 185, 190 (D.D.C. 2013) (identifying examples of "key factors" as (1) when the chosen forum has "no meaningful ties to the controversy," (2) "when the ERISA Plan is administered outside the forum," and (3) "when the forum is not the plaintiff's home district").

[50] *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 49 (D.D.C. 2005) (transferring case to Pennsylvania and, in doing so, according little weight to Maryland plaintiffs' choice of District of Columbia as forum); *see also Virts*, 950 F. Supp. 2d at 106 (transferring to New Jersey, where the plaintiff's home forum was North Carolina); *Gipson*, 563 F. Supp. 2d at 158 (transferring to Minnesota, where the plaintiff's home forum was Maryland).

[51] Compl. ¶¶ 15-18.

[52] *Gipson*, 563 F. Supp. 2d at 157 (quoting *Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 3 (D.D.C. 2004)).

[53] Compl. ¶ 78.

Third, "deference to the plaintiff's choice of forum is misplaced when the venue lacks sufficient ties to the 'material events that constitute the factual predicate for the plaintiff's claims.'"[54] Indeed, courts in this District are especially sensitive to the connection between the underlying facts and the forum when considering whether to transfer ERISA cases: "Under a statute establishing national service of process [such as ERISA], a court should be vigilant to possible forum shopping, especially when the underlying case has little or no connection to the district in which it sits."[55] No material events constituting the factual predicate for the claims in Plaintiffs' Complaint took place in the District of Columbia. In fact, the only link between this case and this District appears to be that Plaintiffs' counsel has an office here. But this Court has repeatedly held that "[t]he location of counsel carries little, if any, weight in an analysis under § 1404(a)."[56] And where a plaintiff's "only asserted tie to the District of Columbia is the location of her counsel," a transfer is in order.[57]

---

[54] *Gipson*, 563 F. Supp. 2d at 157 (quoting *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6 (D.D.C. 1996)); *see also Virts*, 950 F. Supp. 2d at 106 ("If the plaintiff's selected forum has 'no meaningful ties to the controversy,' that selection is 'given diminished consideration." (quoting *Sheldon v. Nat'l R.R. Passenger Corp.*, 355 F. Supp. 2d 174, 178 (D.D.C. 2005))); *Wilderness Soc'y*, 104 F. Supp. 2d at 13 (noting diminished deference accorded plaintiffs' choice of forum where a factual nexus is lacking between the forum and the facts giving rise to the dispute); *Ansell*, 567 F. Supp. 2d at 201 ("[The plaintiff] is not entitled to deference in its choice of forum because the District of Columbia has no meaningful ties to the controversy and no particular interest to the parties or subject matter." (quotation marks omitted)).

[55] *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 30 (D.D.C. 2013).

[56] *Id.* at 30 (quoting *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40 (D.D.C. 2003)).

[57] *See Virts*, 950 F. Supp. 2d at 106; *see also Nat'l Air Traffic Controllers Ass'n v. Dental Plans, Inc.*, 407 F. Supp. 2d 1, 3 (D.D.C. 2005) ("Although the Court affords some deference to the plaintiffs' choice of forum . . . , such deference would be misplaced under these circumstances because the District of Columbia lacks sufficient ties to the parties, facts and claims in the controversy.").

Fourth, "the weight of the plaintiffs' choice is weakened when administration of the ERISA plan occurs outside the forum."[58] Here, the Plan is administered in the Northern District of Georgia, not in the District of Columbia.[59]

These factors, or the absence of them, mean that Plaintiffs' "chosen forum receives little weight . . . ."[60] And giving little deference to Plaintiffs' chosen forum is particularly appropriate where, as here, Plaintiffs have repeatedly sought to file a substantively identical complaint in the transferee forum, and one such motion remains pending there. Under these circumstances, Plaintiffs can hardly claim that their latest "choice" of forum is entitled to weight in a § 1404(a) transfer analysis.

**B. Defendants' Choice of Forum**

The second private-interest factor is the Defendants' choice of forum. "[A] defendant's principal place of business in the transferee venue is a 'legitimate reason' for granting a § 1404(a) motion."[61] SunTrust's principal place of business is in the Northern District of Georgia, the transferee forum.[62] Courts in this District recognize that "the weight of a defendant's choice of forum may be strengthened when the weight of the plaintiff's choice is

[58] *Virts*, 950 F. Supp. 2d at 106 (citing *Campbell v. Consol. Bldg. Specialties*, 683 F. Supp. 271, 273 (D.D.C. 1987)).

[59] Lombard Dec. ¶ 8.

[60] *See Aucoin*, 959 F. Supp. 2d at 190.

[61] *Virts*, 950 F. Supp. 2d at 106 (citing *Bergmann v. Dep't of Transp.*, 710 F. Supp. 2d 65, 74 (D.D.C. 2010)); *see also Mazzarino*, 955 F. Supp. 2d at 31 ("This Court has deemed the locus of a defendant's principal place of business in the transferee district as a valid reason for granting transfer." (citing *Virts*, 950 F. Supp. 2d at 106)).

[62] Lombard Dec. ¶ 2.

comparatively weak."[63] And where, as here, "neither party resides in the chosen forum and the cause of action arises elsewhere," the "presumption in favor of plaintiff's choice of forum may switch to defendants' favor . . . ."[64]

Given Plaintiffs' lack of any relevant ties to this District, "[t]his is not a case where transfer will 'merely shift the balance of inconvenience from Defendant to Plaintiff.' Rather, transfer reduces net inconvenience, and this factor thus weighs in favor of transfer" to the Northern District of Georgia.[65]

### C. Where the Claim Arose

The third private-interest factor is where the claim arose, or "whether the claim arose elsewhere."[66] In ERISA cases like this one, "where the claim arose" is the place where the plan is administered (which is assigned "special relevance") and where the alleged breach of fiduciary duty took place.[67] And the place where the "investment manager, the trustee, and relevant staff

[63] *Virts*, 950 F. Supp. 2d at 106 (citing *Turner & Newall, PLC v. Canadian Universal Ins. Co.*, 652 F. Supp. 1308, 1310 (D.D.C. 1987)).

[64] *Aucoin*, 959 F. Supp. 2d at 191 (alterations omitted).

[65] *Virts*, 950 F. Supp. 2d at 106 (internal citation omitted).

[66] *See, e.g., id.* at 105 (quoting *Gipson*, 563 F. Supp. 2d at 156-57).

[67] *Gipson*, 563 F. Supp. 2d at 157-158 & n.2; *see also Nat'l Air Traffic Controllers*, 407 F. Supp. 2d at 3 (transferring to Northern District of Georgia where "the Plan was 'administered' by the [defendants] in Georgia"); *Campbell*, 683 F. Supp. at 273 (granting motion to transfer in ERISA class action to district in which plan was administered); *Aucoin*, 959 F. Supp. at 191 ("The question of where the claim arose turns on whether there is a nexus between the underlying transactions and the forum." (citing *Gipson*, 563 F. Supp. 2d at 158)).

all work" is the place where "allegations of imprudent management would arise."[68] That place is the Northern District of Georgia in this case.[69]

This factor favors transfer to the Northern District of Georgia.[70]

### D. Convenience of the Parties

The fourth private-interest factor is the convenience of the parties. "When analyzing convenience to the parties, the Court considers 'potential travel cost and lost work impact,'" which is impacted by the location of the Defendants' headquarters and key personnel.[71] As noted, SunTrust is headquartered in Atlanta, the Plan is administered there, and virtually all of the key witnesses and relevant documents are all found there. All nineteen Individual Defendants are current or former SunTrust personnel, and all but two lived and worked in Atlanta during their tenure.[72] And all but five of the nineteen Individual Defendants still reside in the Northern District of Georgia and would be able to participate in this case more conveniently there.[73] None of the Individual Defendants has any relevant connection to this

---

[68] *Gipson*, 563 F. Supp. 2d at 158.

[69] Lombard Dec. ¶¶ 8, 13, 17.

[70] *See, e.g., Aucoin*, 959 F. Supp. at 191 (granting motion to transfer where "[t]here is no dispute that Plaintiffs' claim arose outside [of] the District of Columbia").

[71] *See id.* at 191 (quoting *Gipson*, 563 F. Supp. 2d at 159); *see also Nat'l Air Traffic Controllers*, 407 F. Supp. 2d at 3 (transferring action to Northern District of Georgia where one of two sets of defendants "reside[d] in Georgia" despite that, unlike here, one of five defendants was from the District of Columbia); *Virts*, 950 F. Supp. 2d at 107 (acknowledging that forum where defendant's headquarters and key staff are located is more convenient for defendant).

[72] Lombard Dec. ¶¶ 11, 16.

[73] *Id.* ¶¶ 12, 16.

District, and it would be inconvenient for them to have to travel to this District to participate in the case.[74]

Plaintiffs, too, all live outside the District of Columbia, and they seek to represent a class of tens of thousands of current or former SunTrust employees who are dispersed throughout the country. Where a plaintiff chooses to "subject[] herself to possible travel costs and missed work by leaving her home forum" and filing a case elsewhere, the plaintiff has "'made clear [her] willingness to forego the convenience of a geographically nearby forum,'" and, accordingly, any concern about an inconvenience to that plaintiff is diminished.[75] The only interested party for whom this District might be more convenient is Plaintiffs' counsel, but "convenience to counsel is given little, if any, weight."[76] And because Plaintiffs have sought to intervene in the ongoing litigation in the Northern District of Georgia and their counsel has been in related litigation there for more than three years, they can hardly argue that a transfer to that same District would be inconvenient.

This factor favors transfer to the Northern District of Georgia.[77]

**E. Convenience for the Material Witnesses.**

The fifth private-interest factor—and the "most critical factor to examine under 28 U.S.C. § 1404(a)"—is the convenience of the witnesses, "to the extent that the witnesses may actually

---

[74] *Id.* ¶¶ 12, 16; *see, e.g.*, *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1377 (S.D. Fla. 2003) (finding that defendant would be inconvenienced if its key executives and managers were absent from work to attend an out-of-state trial).

[75] *Virts*, 950 F. Supp. 2d at 107 (quoting *Treppel v. Reason*, 793 F. Supp. 2d 429, 437 (D.D.C. 2011)) .

[76] *Aucoin*, 959 F. Supp. 2d at 191-92.

[77] *See, e.g.*, *Virts*, 950 F. Supp. 2d at 107; *Aucoin*, 959 F. Supp. 2d at 191.

be unavailable for trial in one of the fora."[78] Based on the allegations in the Complaint, the key witnesses in this case would be the nineteen Individual Defendants, who are alleged to have breached their fiduciary duties under ERISA. As noted above, the Northern District of Georgia is the most convenient forum for them, and the location where any breach of duty would necessarily have occurred. To the extent there are any other witnesses affiliated with SunTrust, it is likely that they, too, would be based in the Northern District of Georgia, where SunTrust is headquartered, or that they travel there on a regular basis to conduct SunTrust business. And because Atlanta is more than 100 miles from the District of Columbia, these witnesses would be "unavailable" as that term is defined by Rule 32(a)(4) of the Federal Rules of Civil Procedure. (According to the Complaint, Plaintiffs lack first-hand knowledge of the alleged fiduciary acts upon which their allegations are based and, therefore, are not likely to be material witnesses in this case,[79] but they, too, reside more than 100 miles from the District of Columbia.[80]).

This factor favors transfer to the Northern District of Georgia.[81]

---

[78] *Ansell*, 567 F. Supp. 2d at 200-01 (quoting *Mathis v. Geo Group, Inc.*, 535 F. Supp. 2d 83, 87 (D.D.C. 2008)).

[79] *See, e.g.*, Compl. ¶¶ 12 ("[M]any facts are still within Defendants' exclusive possession . . . ."), 61 n.7 ("Plaintiffs currently lack comprehensive information regarding the fees and performance of the versions actually offered in the 401(k) Plan, but believe the fees were higher and the performance even worse than the publicly available versions.").

[80] *See* Compl. at 1. Each address listed in the caption of Plaintiffs' Complaint is approximately 200 miles from the District of Columbia.

[81] *See, e.g.*, *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 126 (D.D.C. 2008) (finding that "convenience of parties and witnesses [] weighs in favor of transfer" where "most of the witnesses" were in the transferee forum).

**F. Ease of Access to Sources of Proof**

The sixth private-interest factor is "the ease of access to sources of proof."[82] Some authority suggests this factor is less significant "in the Internet age."[83] But if ease of access to sources of proof has any impact, it supports transfer: the relevant documents in this case consist of records maintained by SunTrust.[84] Because SunTrust is headquartered in the Northern District of Georgia, and the Plan is administered there, the records and documents at the center of Plaintiffs' allegations are located in the Northern District of Georgia.[85]

This factor favors transfer to the Northern District of Georgia.[86]

**IV. The Public-Interest Factors Favor Transfer.**

**A. Transferee Court's Familiarity With the Governing Laws**

The first public-interest factor is the transferee court's "familiarity with the governing laws."[87] Although courts considering § 1404(a) motions to transfer in some ERISA cases have observed that this factor "does not affect the transfer analysis because this factor loses force when the issue involves federal law and all federal courts are 'competent to decide federal issues

---

[82] *See, e.g.*, *Gipson*, 563 F. Supp. 2d at 157.

[83] *See, e.g.*, *Virts*, 950 F. Supp. 2d at 107 (citing *Holland v. ACL Transp. Servs., LLC*, 815 F. Supp. 2d 46, 57 (D.D.C. 2011)).

[84] Plaintiffs acknowledge "many facts are still within Defendants' exclusive possession." Compl. ¶ 12.

[85] Lombard Dec. ¶ 2, 8, 14, 18.

[86] *Mazzarino*, 955 F. Supp. at 32 (acknowledging that, even where "the Court is not greatly concerned with access to the sources of proof," this factor "tilts slightly in favor of transfer").

[87] *See, e.g.*, *Gipson*, 563 F. Supp. 2d at 157.

correctly,'"[88] the overriding consideration here is the public interest in "uniform interpretation of the complex ERISA laws."[89] The issue becomes not whether this Court is "competent to decide federal issues correctly," but whether the transferee court's familiarity with the applicable legal rulings advances the public interests in uniformity and efficiency. Here, the fact that specific federal laws applicable to this case have already been applied in *Fuller* and *Stargel* make plain that it does.[90]

Along these lines, it is particularly significant that "[t]he Plan administrators also benefit from the certainty of uniform legal standards by being able to conform their behavior to the rules of one body of precedent."[91] Over the past three years, the Northern District of Georgia and the Eleventh Circuit have issued multiple rulings in *Fuller* and *Stargel* and expended substantial judicial resources analyzing the relevant legal issues. And, because Plaintiffs themselves have a pending motion to file substantially the same complaint in the Northern District of Georgia, the work there is not yet complete. This case is one in which "[t]he Plan participants will benefit from one court's consistent oversight."[92] Under these circumstances, it would hardly make

---

[88] *Aucoin*, 959 F. Supp. 2d at 192 (quoting *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 n.6 (D.D.C. 2003)).

[89] *See Virts*, 950 F. Supp. 2d at 107-08 (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. Tri–State Interiors, Inc.,* 357 F. Supp. 2d 54, 58 (D.D.C. 2004)).

[90] *See Villa v. Salazar*, 933 F. Supp. 2d 50, 56 (D.D.C. 2013) (Collyer, J.) ("Paramount in the § 1404(a) inquiry in this case is the pendency of the California cases, which, as indicated, involve APA challenges to the exact same decision at issue in this case. Judicial economy and convenience strongly favor transfer of this case to the district in which the California cases are pending.").

[91] *Gipson*, 563 F. Supp. 2d at 159 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)).

[92] *Id.*

sense—nor is it in the public interest—to allow Plaintiffs to proceed in a parallel action in this Court.

This factor favors transfer to the Northern District of Georgia.[93]

### B. Relative Congestion of the Courts

The second public-interest factor is the relative congestion of the courts. This District has recognized that the average disposition time of cases is a measure of the "congestion of the courts."[94] In this District, cases are resolved before pretrial in an average of 9.9 months; during or after pretrial, in 34.6 months; and for "trial," in 32.4 months. By comparison, in the Northern District of Georgia, cases are resolved before pretrial in an average of 5.1 months; during or after pretrial, in 11.5 months; and for "trial," in 28.1 months.[95] Moreover, in this District, 17.2% of cases have been pending for three years or more, compared with 2.1% in the Northern District of Georgia.[96] Based on these statistics, this District is more congested.

This factor favors transfer to the Northern District of Georgia.[97]

### C. Local Interests in Deciding Local Controversies at Home

The third public-interest factor is "the local interest in deciding local controversies at home."[98] The Supreme Court has long acknowledged the importance of "having localized

---

93 *See id.* at 159.

94 *See, e.g.*, *Virts*, 950 F. Supp. 2d at 108.

95 Table C-5, U. S. District Courts—Civil Cases Pending, by District and Length of Time Pending, as of September 30, 2013, *available at* http://www.uscourts.gov/Statistics/ JudicialBusiness/2013/statistical-tables-us-district-courts-civil.aspx).

96 Table C-6, U. S. District Courts—Civil Cases Pending, by District and Length of Time Pending, as of September 30, 2013, *available at* http://www.uscourts.gov/Statistics/ JudicialBusiness/2013/statistical-tables-us-district-courts-civil.aspx).

97 *See, e.g.*, *Virts*, 950 F. Supp. 2d at 108.

controversies decided at home,"[99] and a forum where "[t]he central events at issue [] occurred" typically "has the far greater interest in resolution of [the] case."[100] The location of the administration of the Plan and of large numbers of Plan participants also impacts the analysis of this factor.[101]

From any perspective, "home" in this case is the Northern District of Georgia, and not the District of Columbia. SunTrust is headquartered in Atlanta, and all Individual Defendants lived and worked in the Northern District of Georgia when they were employed by SunTrust, or regularly traveled there to conduct SunTrust business.[102] All but five of the nineteen Individual Defendants currently reside in the Northern District of Georgia; not one resides in the District of Columbia.[103] Moreover, any alleged unlawful activity by Defendants would have occurred in Atlanta, where the Plan is administered in all respects.[104] SunTrust's corporate residence, headquarters, and significant operations in Atlanta give the Northern District of Georgia a greater stake in the outcome of this case.[105] Plus, nearly 27% of the Plan's participants reside in

---

[98] *See Gipson*, 563 F. Supp. 2d at 157; *see also Aucoin*, 959 F. Supp. 2d at 193 ("[T]he local interest in having localized controversies decided at home favors transfer.").

[99] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

[100] *Cheney*, 583 F. Supp. 2d at 127.

[101] *See Gipson*, 563 F. Supp. 2d at 159 ("Minnesota has a strong local interest in deciding this controversy because the second highest number of plan participants live in Minnesota and it is the district where Wells Fargo administers the Plan.").

[102] Lombard Dec. ¶¶ 2, 10-12, 15-16.

[103] *Id.* ¶¶ 12, 16.

[104] *Id.* ¶¶ 8, 13, 17.

[105] *Cheney*, 583 F. Supp. 2d at 127 (considering administration of a 401(k) plan and the plan's trustee's decisions as some of the "central events" material to this determination).

Georgia—more than any other jurisdiction, and far more than the nearly .5% of participants who reside in the District of Columbia.[106]

This factor favors transfer to the Northern District of Georgia.[107]

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court transfer this case to the United States District Court for the Northern District of Georgia, Atlanta Division.

Dated: July 14, 2014 Respectfully submitted,

*/s/ Meredith Moss*
Meredith Moss
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 200
Washington, D.C. 20006
(202) 626-2916
mmoss@kslaw.com

*David Tetrick, Jr.
*Darren A. Shuler
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-4600
dtetrick@kslaw.com
dshuler@kslaw.com

** pro hac vice application pending*

[106] Lombard Dec. ¶ 21; *see Gipson*, 563 F. Supp. 2d at 159 ("Minnesota has a strong local interest in deciding this controversy because the second highest number of plan participants live in Minnesota . . . .").

[107] *See Gipson*, 563 F. Supp. 2d at 159.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATALIE BROWN, *et al.*,

Plaintiffs,

vs.

SUNTRUST BANKS, INC., *et al.*,

Defendants.

Civil Case No. 1:14-cv-1090-RMC

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2014 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record listed below:

James A. Moore
MCTIGUE LAW LLP
4530 Wisconsin Avenue, NW, Suite 300
Washington, DC 20016
Email: jmoore@mctiguelaw.com

*/s/ Meredith Moss*
Meredith Moss
D.C. Bar No. 484108